# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____22-8272-RMM_____

UNITED STATES OF AMERICA

v.

VINCENT BANNER,

Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?    ___ Yes  ✔ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    ___ Yes  ✔ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?    ___ Yes  ✔ No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY: _____

DANIEL E. FUNK
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.    0592501
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:    305-905-7509
Fax:    561-820-8777
Email:   daniel.funk@usdoj.gov

AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   22-8272-RMM |
| VINCENT BANNER, | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | | |

<div style="border:1px solid red;">
FILED BY _____ **TM** _____ D.C.

**Jul 11, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach
</div>

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 4, 2021 until April 25, 2022 _____ in the county of _____ Palm Beach _____ in the
_____ Southern _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(B)(vi) | Conspiracy to distribute 40 grams or more of fentanyl |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
_Complainant's signature_

FBI Special Agent Gregory Hoffman
_Printed name and title_

Sworn to me via Telephone-FaceTime
by the applicant in accordance with the
requirements of Fed. R. Crim. P. 4.1.

Date:   7/11/22

_____
_Judge's signature_

City and state:   West Palm Beach, FL

RYON M. MCCABE, U.S. Magistrate Judge
_Printed name and title_

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR CRIMINAL COMPLAINT**

I, Gregory Hoffman, being first duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am currently a special agent with the Federal Bureau of Investigation (FBI) and have been so employed since May 2016. Following an initial five-month training period at the FBI Academy in Quantico, Virginia, I was assigned to Violent Crime Squad in the Palm Beach County Resident Agency where I have worked since October 2016. My area of work includes the investigation of violent crimes, traditional narcotics trafficking, and dark web narcotics trafficking. I have investigated and obtained convictions against multiple drug traffickers engaged in the interstate smuggling and sale of narcotics utilizing the dark web, postal system, and other means of distribution, supply, and transport. I have attended multiple conferences to receive training specific to dark web narcotics trafficking.  Through my training and experience, I am familiar with investigations involving the use of computers, mobile devices, and associated software applications used to further drug trafficking.  My experience and training include investigations covering the use of The Onion Router, virtual private network services, and encrypted software services used by drug traffickers to conceal their activity from law enforcement.  Accordingly, I have worked numerous cases involving violations of 21 U.S.C. § 841(a)(1) and 846.

2.      Prior to working as an FBI agent, I worked as a prosecutor in the Nassau County District Attorney's Office for a period of approximately twenty-two months.  Prior to that employment, I worked in multiple internships concerning criminal and civil law enforcement on behalf of various state and municipal governments in Virginia and New York.

1

3.     This affidavit is submitted in support of a criminal complaint charging Vincent Banner (BANNER) with conspiracy to distribute 40 grams or more of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1), 846, and 841(b)(1)(B)(vi).

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

**General Investigation**

5.     This application stems from an ongoing criminal investigation into illegal narcotics dealers operating on criminal online marketplace websites, including Dark0de Marketplace, White House Marketplace, World Marketplace, and other marketplaces used for the illicit sale/purchase of controlled substances. During this investigation, I have learned that there are many criminal marketplaces accessible through The Onion Router ("Tor") network on the "Dark Web." Dark0de Marketplace, White House Marketplace, World Marketplace, and other marketplaces used for the illicit sale/purchase of controlled substances are designed to promote the anonymous sale of illegal items, such as narcotics, in exchange for Bitcoin and other peer-to-peer cryptocurrencies (also known as "virtual currencies"). These Dark Web drug marketplaces are made up of vendor profiles akin to those profiles or "shops" seen on websites such as Ebay.com and Etsy.com. Each vendor profile can offer a selection of products to sell. These products are generally different quantities of narcotics offered for sale. This affidavit concerns the operation of narcotics vendor profile "Syntropy" and "syntropy 2021" and the vendor profile "mrgrimm" on various dark web marketplaces.

6.      The investigation resulted in the arrest of two individuals who had worked together operating the Syntropy vendor profile on the dark web. After their arrest, they provided proffers to federal agents and described Vincent BANNER's involvement in the operation of the Syntropy vendor profile. According to the cooperating witnesses, BANNER ran the Syntropy profile during approximately the Summer of 2021 while COOPERATOR 2 was incarcerated for a violation of federal supervised release. During that time, BANNER managed the Syntropy profile on-line, processed purchases and mailed parcels. After the release of COOPERATOR 2, BANNER and COOPERATOR 2 had a falling out and dissociated until April of 2022 when BANNER reunited with COOPERATOR 2 to operate the Syntropy vendor profile. COOPERATOR 2 paid BANNER to package and mail parcels containing controlled substances that had been purchased from Syntropy. Agents corroborated BANNER's involvement by a number of different means. First, BANNER was recorded on video surveillance multiple times at the business where COOPERATOR 2 stored large quantities of controlled substances. BANNER was seen carrying boxes and (mailing supplies) from the business. Second, the COOPERATOR 2 provided agents with access to his computer. The records memorialized transactions in which BANNER mail parcels for Syntropy. Third, agents obtained a tracking warrant for BANNER's car and saw him in the location of COOPERATOR 2's business and locations where Syntropy parcels were mailed. Fourth, agents compared USPS records to the statements of COOPERATOR 2, the surveillance from the business, the data on COOPERATOR 2's computer and the historical track of BANNER's car. USPS records show that parcels for Syntropy were deposited into postal boxes on dates and times when BANNER was in the area of the postal boxes. The statements of COOPERATOR 2 were consistent with the video surveillance at the business, computer data, vehicle tracking and USPS records.

3

## **PROBABLE CAUSE**

### **Cooperator 1 Arrest and Debriefing**

7.      On March 10, 2022, an FBI investigation of a dark web internet drug vendor "Syntropy" led to the arrest of COOPERATOR 1. As a part of the investigation, agents seized drugs COOPERATOR 1 had placed into the U.S. Postal Service mail stream. The drugs included methamphetamine, fentanyl, heroin, and other narcotics.[1] Agents later determined that a second person, COOPERATOR 2, had been operating the on-line Syntropy vendor profile and coordinating the drug transactions.[2] The Syntropy vendor profile had continued to operate after the arrest of COOPERATOR 1.

8.      On March 15, 2022, COOPERATOR 1 was formally interviewed by agents with his attorney present.[3] During his interview, COOPERATOR 1 admitted to knowingly mailing narcotics while assisting with the operation of the "Syntropy" vendor profile on the dark web. Since December of 2021, COOPERATOR 1 packaged and mailed narcotics for the orders received

---

[1] Beginning in the summer of 2021, agents began making online undercover purchases from the Syntropy moniker across multiple dark web marketplaces including World Market, White House Market, and Dark0de Market. These purchases resulted in the delivery of narcotics to undercover post office boxes. The purchases from Syntropy were conducted on July 16, 2021 (1.7 grams cocaine received on July 23, 2021), August 3, 2021 (4.5 grams cocaine received on August 11, 2021), January 18, 2022 (8.6 grams methamphetamine received on January 20, 2022), February 1, 2022 (48.6 grams methamphetamine recovered on February 4, 2022), and February 9, 2022 (65.6 grams methamphetamine recovered on February 9, 2022). Each of the narcotics purchased from Syntropy field tested positive for the type of controlled substance purchased. Each of the narcotics purchases also appeared to be the type of controlled substance purchased based on the training and experience of the agents conducting the investigation.

[2] This affidavit is based, in part, upon information provided by two cooperators. COOPERATOR 1 was arrested on March 10, 2022, and COOPERATOR 2 was arrested on May 10, 2022. The statements of COOPERATOR 2 will be addressed in the later parts of this affidavit.

[3] COOPERATOR 1 provided information with the expectation that he will receive a benefit. He expects that his sentence will be reduced based on his truthful cooperation. In addition to his substantive charges, COOPERATOR 1 is also facing a violation of federal supervised release for this criminal behavior. COOPERATOR 1 is currently charged by Information with one count of conspiracy to distribute controlled substances, including 50 grams or more of methamphetamine, 400 grams or more of fentanyl, heroin, MDMA and ketamine. His minimum mandatory sentence is 10 years. His maximum possible sentence is life. COOPERATOR 1 is expecting to receive a sentencing benefit for providing law enforcement with truthful information.  At the time he provided information to law enforcement he was charged by complaint with conspiracy to distribute 50 grams or more of methamphetamine, conspiracy to distribute 40 grams or more of fentanyl and possession with intent to distribute 50 grams or more of methamphetamine. The minimum mandatory sentence was 10 years, and the maximum possible sentence was life.

and processed by co-conspirator COOPERATOR 2. On the same day of COOPERATOR 1's arrest, agents recovered a large quantity of various narcotics, prepackaged for mailing, from an office used by COOPERATOR 1 and COOPERATOR 2.

9.      During his proffer, COOPERATOR 1 identified BANNER as an individual he met through COOPERATOR 2.  COOPERATOR 1 also identified BANNER as an individual he associated with on his own after meeting him through COOPERATOR 2. COOPERATOR 1 identified BANNER's phone number as "5613507713."

10.      COOPERATOR 1 said his relationship with COOPERATOR 2 began when he and COOPERATOR 2 attempted to establish a virtual mailbox business in Miami in early 2021. Between May 4, 2021, and August 3, 2021, COOPERATOR 2 was incarcerated in the Southern District of Florida for violating his supervised release.[4] According to COOPERATOR 1, COOPERATOR 2's sister contacted COOPERATOR 1 and asked him to go to the hotel where COOPERATOR 2 had been living to recover his belongings. Among other things, COOPERATOR 1 recovered a laptop and hard drive.  COOPERATOR 1 delivered the items to COOPERATOR 2's sister who remarked that she had to bring the items to "Vinny."  While COOPERATOR 2 was incarcerated, COOPERATOR 1 was at the office he shared with COOPERATOR 2 in Miami, Florida, when BANNER entered the office.  BANNER emptied out a safe containing what COOPERATOR 1 believed to be COOPERATOR 2's belongings. BANNER stated to COOPERATOR 1 that he had to continue an unidentified activity on COOPERATOR 2's behalf because BANNER felt he had no choice.

---

[4] Both COOPERATOR 1 and COOPERATOR 2 have been previously convicted for charges related to the unlawful distribution of narcotics. On October 27, 2017, COOPERATOR 1 was adjudicated guilty for Money Laundering Conspiracy and Conspiracy to Distribute MDMA in the Southern District of Florida. According to the plea agreement/factual basis, COOPERATOR 1 used Bitcoin to facilitate the online sale of MDMA. On December 20, 2017, COOPERATOR 2 was adjudicated guilty for Monday Laundering Conspiracy in the District of Colorado. According to the plea agreement COOPERATOR 2 had used bitcoin to facilitate the online sale of MDMA.

11.     COOPERATOR 1 further disclosed to investigators that he first learned fully of COOPERATOR 2's dark web drug dealing activities during a meal he shared with COOPERATOR 2 and BANNER in 2021 at the Council Oak Steakhouse within the Seminole Hard Rock Casino in Hollywood, Florida.  During the dinner, BANNER and COOPERATOR 2 began openly referring to dark web activity and made references to message encryption and product listings. BANNER remarked that he had changed a product description to include the verbiage "new and improved." COOPERATOR 1 recognized, due to his own prior dark web drug vending activity, resulting his 2017 conviction, that their discussion concerned dark web drug vendor activity.

12.     COOPERATOR 1 began a friendship with BANNER independent from COOPERATOR 2 and would visit BANNER at his business to talk. During a conversation with COOPERATOR 1, BANNER disclosed that he operated the dark web drug vendor moniker "mrgrimm." It should be noted that during the interview/debriefing, agents never mentioned the vendor "mrgrimm" prior to COOPERATOR 1 bringing it up.  COOPERATOR 1 stated that BANNER showed him a computer screen with the "mrgrimm" vendor page on a dark web drug distribution marketplace. COOPERATOR 1 also provided agents with BANNER's residential and businesses addresses which were later confirmed by agents during surveillance and using records checks.

**Cooperator 2 Arrest and Debriefing**

13.     On May 10, 2022, COOPERATOR 2 was arrested in the Southern District of Florida for distribution of controlled substances from the Syntropy vendor profile.[5] On the same

---

[5] COOPERATOR 2 provided information with the expectation that he will receive a benefit. He expects that his sentence will be reduced based on his truthful cooperation. In addition to his substantive charges, COOPERATOR 2 is currently charged by Information with one count of conspiracy to possess with intent to distribute controlled substances, including 50 grams or more of methamphetamine, 400 grams or more of fentanyl, and 100 grams or more

date, a search warrant was executed at COOPERATOR 2's Boca Raton business office. The search resulted in the seizure of approximately 912 grams of methamphetamine, 482 grams of fentanyl, 1079 grams of heroin, 316 grams of MDMA/MDA, and 55 grams of cocaine. A representative sample of each suspected drug type in the preceding list was field tested by agents with a TruNarc device and returned a positive field test result. Furthermore, during the search, agents observed that the office was a partially legitimate virtual mailbox company. The company had a room stocked with mailing materials to include envelopes and mylar bags of the type used to send the drugs which agents ordered from the Syntropy vendor profile.

14.     On May 13, 2022, May 16, 2022, and June 13, 2022, COOPERATOR 2 gave formal debriefs to investigators.[6] COOPERATOR 2 indicated that he was the chief operator of the Syntropy vendor profile and had employed both COOPERATOR 1 and BANNER at various times to assist in the physical distribution/mailing of controlled substances.

15.     During the first period BANNER worked for COOPERATOR 2 prior to May 4, 2021, BANNER acted as a middleman who would receive drug orders from COOPERATOR 2 and relay those orders to shippers only known to BANNER. The unknown shippers would then mail the packages containing narcotics, using narcotics supplied by COOPERATOR 2 through BANNER. COOPERATOR 2 paid BANNER $2500 a week to manage the shipping of Syntropy dark web drug orders through his mailers.

---

of heroin. His minimum mandatory sentence is 10 years. His maximum possible sentence is life. When he originally provided information to law enforcement, he was charged by complaint with conspiracy to distribute 50 grams or more of methamphetamine, conspiracy to distribute 40 grams or more of fentanyl and possession with intent to distribute 50 grams or more of methamphetamine. The minimum mandatory sentence was 10 years, and the maximum possible sentence was life.

[6] COOPERATOR 2 also directed agents to storage facility locations resulting in the seizure of an estimated 9+ kilos combined of suspected fentanyl, heroin, ecstasy tablets, MDMA/MDA powder, and methamphetamine in Boca Raton, Florida. Additional investigative efforts, separate from the proffer, led to the seizure of an estimated 6 kilos of suspected cocaine in New York City, New York. COOPERATOR 2 provided information with the expectation that he will receive a benefit. He expects that his sentence will be reduced based on his cooperation.

16.     COOPERATOR 2 stated that in addition to managing the shipment of orders going out to Syntropy customers, BANNER assisted COOPERATOR 2 in receiving narcotics from COOPERATOR 2's source of supply. BANNER provided COOPERATOR 2 with safe residential address, occupied by friends, where they could receive packages containing kilogram amounts of controlled substances. COOPERATOR 2 paid BANNER $2500 per parcel successfully received for this service.

17.     On May 4, 2021, COOPERATOR 2 was arrested for a violation of federal supervised release and sent to prison for three months until his release on August 3, 2021. COOPERATOR 2 stated that during this period of incarceration, BANNER ran the Syntropy profile on his behalf.

18.     According to COOPERATOR 2, following the arrest of COOPERATOR 1 on March 10, 2022, he rekindled a friendship with BANNER. They had previously stopped working together when BANNER had told COOPERATOR 2 lost approximately 1 ½ kilos of heroin given by COOPERATOR 2 to BANNER to sell.

19.     In early April 2022, BANNER again resumed responsibilities for shipping the Syntropy drug parcels. COOPERATOR 2, stated that BANNER shipped parcels until he found a tracking device on his vehicle; after which, BANNER discontinued shipping drugs.[7] BANNER returned the bulk supply of narcotics to COOPERATOR 2 that BANNER had received from COOPERATOR 2. BANNER dropped off the narcotics at a friend's house where COOPERATOR 2 collected them. COOPERATOR 2 then stored the narcotics in his office and at a storage unit in Boca Raton, Florida.

---

[7] Agents executed a search warrant tracking device on BANNER's vehicle between April 19 and April 25, 2022. Based on readings and alerts sent out by the tracking device, it appears the device was removed from the vehicle in the vicinity of BANNER's known home address on April 25, 2022.

20.     COOPERATOR 2 informed investigators that he had organized the orders for the Syntropy moniker on a spreadsheet located on his Macintosh laptop. The spreadsheet represented the activity of Syntropy over multiple marketplaces and memorialized the transactions where BANNER had mailed parcels for him.  COOPERATOR 2 showed agents how he organized data related to Syntropy sales in multiple tables and spreadsheet tabs on his computer. COOPERATOR 2 showed agents the transactions where BANNER mailed the parcels. COOPERATOR 2 identified data that showed the amount of narcotics BANNER had shipped prior to BANNER locating a law enforcement tracking device on his vehicle. The data showed that BANNER had shipped 52 grams of white powder fentanyl ("China White) and 620 M30 pills with an estimated weight of 62 grams.[8]

21.     COOPERATOR 2 was also aware that BANNER used the dark web drug vendor moniker "mrgrimm" across multiple marketplaces.  COOPERATOR 2 admitted that he had obtained heroin for BANNER's "mrgrimm" vendor profile himself and that he and BANNER shared the same source for MDMA.[9]

**Investigation into BANNER**

22.     On April 15, 2022, agents applied for and were granted a federal search warrant to install a tracker on BANNER's vehicle (SDFL Case Number # 22-mj-8154-RMM), which resulted in the successful installation of a tracker on April 19, 2022. Additionally, on April 1, 2022, agents had successfully obtained a federal warrant to collect location data for a cell phone known to belong to COOPERATOR 2.[10]

---

[8] Your affiant knows from publicly available resource research that one M30 pills generally weigh approximately 0.1 grams.  Your affiant also estimated from looking at lab reports that the M30 pills seen in this case have individually weighed just over 0.1 grams.  Accordingly, your affiant used the value of 0.1 gram as his estimated weight for each pill.
[9] On May 10, 2022, search warrants were executed for BANNER's residence and car. No narcotics were discovered. BANNER was interviewed and denied involvement in the distribution of narcotics with COOPERATOR 2.
[10] Location data was provided to agents by the service provider through fifteen minute "pings" of the phone location. The time-stamped data included, among other items, geocoordinates and a meter range within which the phone was located.

23.     On April 15, 2022, prior to the tracker's installation, agents established surveillance of BANNER at his place of business in West Palm Beach, Florida. BANNER owns an exotic snack supply food supply business called "iSnax" located at 5930 Okeechobee Blvd. West Palm Beach, FL.   At approximately 4:24 p.m., agents observed BANNER depart the business in his blue Cadillac and proceed southbound on Interstate 95.

24.     BANNER drove in a manner consistent with what law enforcement refers to as a "heat run." Based on my training and experience, the "heat run" is an erratic driving pattern meant to reveal or stop law enforcement surveillance. From your affiant's training and experience, I recognize highly irregular driving patterns which include the use of random stops, U-turns, residential street use, and doubling back to be indicative of "surveillance detection routes" or "heat runs" used to recognize and evade surveillance used by drug dealers as well as other actors looking to evade law enforcement.  The pattern of driving is inconsistent with someone driving directly to any desired location. BANNER exited Interstate 95 westbound on W Palmetto Park Road. BANNER then proceeded northbound using Military Trail, Town Center Road, Commercial Trail, and Renaissance Way.[11]  At approximately, 5:00 p.m., agents lost sight of BANNER's vehicle before reacquiring it ten minutes later at the Seasons 52 restaurant at 5300 NW Executive Center Dr. Boca Raton, Florida.  The restaurant/bar is located within walking distance (approximately a few hundred meters) of the office building containing the office of COOPERATOR 2.

25.     Agents entered Seasons 52 and established surveillance in the dining area and bar. At approximately 5:35 p.m., COOPERATOR 2 and BANNER entered the restaurant and took two seats at the bar next to one of the agents.  A second agent relocated to the bar and overhead the conversation between COOPERATOR 2 and BANNER.  The second agent overheard BANNER

---

[11] This route is significant as it involved BANNER going one exit further south than the most direct route to his ultimate destination.

discussing finances and specifically heard mention of "spreadsheet" or "spreadsheets." The agent could also hear BANNER talking about advertising something on Tiktok. Agents believe the conversation may have concerned legitimate business activity, at least in part, and could not fully determine whether the conversation concerned criminal activity as well.

26.     After the installation of the vehicle tracker on April 19, 2022, agents were able to determine that on several occasions, BANNER's vehicle traveled to the same area in Boca Raton where Seasons 52 and the COOPERATOR 2's office was located. The location data and surveillance video from inside COOPERATOR 2's office building corroborate COOPERATOR 2's statement that BANNER was assisting him in the distribution of narcotics for the Syntropy vendor profile. The corroborating instances are as follows:

a)     On April 20, 2022, BANNER's vehicle arrived at Seasons 52 in Boca Raton at approximately 8:34 p.m. and later proceeded to park in a lot across from COOPERATOR 2's office at 9:45 p.m. BANNER's vehicle then departed at 10:04 p.m. and went two exits south on Interstate 95 before exiting the highway, reentering northbound, and proceeding directly to BANNER's home. During this time frame, COOPERATOR 2's phone location showed pings in the same general area of COOPERATOR 2's office with a range of 653 meters at 8:40 p.m. and 10:12 p.m. prior to the phone departing the area. A review of security camera footage showed BANNER and COOPERATOR 2 in the hallway outside of COOPERATOR 2's office space at time stamps 8:47 p.m., 9:41p.m., 9:48 p.m., and 9:54 p.m..[12] The two can be seen approaching COOPERATOR 2's office together with BANNER then departing multiple times with large boxes:

---

[12] Through extensive review of various evidence in this case, agents believe the cameras in this building to have a timestamp discrepancy of approximately 10 minutes ahead in comparison to normalized actual time of day.





b)      On April 21, 2022, BANNER's vehicle arrived outside COOPERATOR 2's office building at approximately 8:28 p.m. and appeared to park in the adjoining lot until 10:33 p.m. During this time frame, COOPERATOR 2's phone location showed pings in the same general area of COOPERATOR 2's office with a range of 653m at both 8:52 p.m. and 10:23 p.m.  Following its departure, BANNER's vehicle proceeded directly to his home. Security camera footage showed BANNER and COOPERATOR 2 in the hallway outside of COOPERATOR 2's office space at time stamps 8:21 p.m., 8:34 p.m., and 8:44 p.m.[13]  BANNER can be seen entering while holding his cell phone and exiting while holding mail parcels (see below):

---

[13] A review of the security camera footage appeared to reveal that the time stamps on the footage were inaccurate by several minutes. This applies to all video time stamps going forward from this location in this affidavit.



c)       On April 22, 2022, BANNER's vehicle arrived in the vicinity of COOPERATOR 2's office at 3:15 p.m. and departed at approximately 3:25 p.m.  COOPERATOR 2's phone ping put its location within the same general location during the same time frame with a ping radius of 653 meters.  BANNER's vehicle then proceeded to travel in a highly indirect manner to a building of commercial storefronts.  BANNER appeared to be doing a "heat run." The route included irregular patterns of doubling back to locations already passed, using slower alternatives to Interstate 95 for significant periods despite them resulting in slower travel, and ultimately resulted in the vehicle arriving at the commercial storefronts at approximately 5:00 p.m. despite passing within a short distance of them at approximately 3:56 p.m.  Agents were able to catch up to the vehicle and observe BANNER exit one of the storefronts advertising tax services before reentering his car.  The building also had a business offering USPS, UPS, and FedEx mailing services.  The vehicle then proceeded to the BANNER's home. A review of security camera footage, from the same day, showed BANNER and COOPERATOR 2 in the hallway outside of COOPERATOR 2's office space with footage stamped at 2:49 p.m., 3:07 p.m., and 3:14 p.m.  COOPERATOR 2 can be seen approaching his office holding a package and BANNER can be seen entering while holding his cell phone and exiting while holding a small package (see below):



d)  On April 23, 2022, BANNER's vehicle went from BANNER's home to the vicinity of COOPERATOR 2's office at approximately 8:25 a.m. before departing at 8:55 a.m. COOPERATOR 2's phone ping put its location within the same general location during the same time frame with a ping radius of 653 meters. BANNER's vehicle proceeded northbound on Interstate 95 before exiting eastbound and standing still in an apartment parking lot for three minutes before returning to the highway and proceeding southbound. BANNER's vehicle then again proceeded in an irregular manner through neighborhoods and indirect routes to the same location in Pompano Beach that he had been to the prior day. BANNER's vehicle then departed this area at approximately 10:55 a.m. The vehicle then engaged in a protracted series of maneuvers to include multiple instances of doubling back, using residential roads to travel alongside main commuter roads, and turnarounds before briefly stopping at a USPS office located at the corner of W Seacrest Blvd and N Boynton Beach Blvd. at 12:48 p.m. for approximately one minute. BANNER's vehicle then again engaged in a series of indirect travel maneuvers while en route to place of business in West Palm Beach, Florida, arriving at approximately 1:25 p.m. A review of security camera footage from the same day showed BANNER and COOPERATOR 2 in the hallway outside of COOPERATOR 2's office space with at 8:18 a.m., 8:44 a.m., and 8:50 a.m. BANNER can be seen entering and leaving with a black backpack (see below):



e)      On April 25, 2022, BANNER's vehicle went from BANNER's home to the vicinity of COOPERATOR 2's office at approximately 8:55a.m. before departing at 9:31a.m. COOPERATOR 2's phone ping put its location within the same general location during the same time frame with a ping radius of 653 meters. As it did on April 23, 2022, BANNER's vehicle then proceeded northbound on Interstate 95 before exiting eastbound and stand still in an apartment parking lot, this time for one minute, before returning to the highway and proceeding southbound. BANNER's vehicle then proceeded relatively directly to the same Pompano Beach commercial building, arriving at approximately 10:09 a.m. At approximately 11:48 a.m., BANNER departed the building and drove relatively directly to his iSnax business in West Palm Beach, Florida. Later, BANNER departed in his vehicle from his home at approximately 7:34 p.m. Almost immediately, BANNER began again engaging in an indirect manner of travel including doubling back, passing destinations he would ultimately stop at, and executing U-turns. After stopping at a Duffy's restaurant for approximately one hour, BANNER continued irregular driving in passing by the complex in which his home was located. BANNER's vehicle executed a U-turn and ultimately entered the residence area at approximately 10:13 p.m. At 10:15 p.m. the tracker notified agents that it had been removed.[14] Agents subsequently checked the vehicle and determined the tracker was no longer attached to the vehicle. A review of security camera footage from the same day

---

[14] An inquiry by agents determined that the tracker will notify agents that it has been removed upon the magnets being disturbed by a pulling force.

showed BANNER and COOPERATOR 2 in the hallway outside of COOPERATOR 2's office

space with footage stamped with times 12:08 a.m., 8:48 a.m., 9:18 a.m., and 12:16 p.m.  BANNER

can be seen entering while holding his cell phone and exiting while holding a box and backpack

he was not wearing while entering (see below):

  



**Combined Information from COOPERATOR 2's Computer, USPS Scans, and
BANNER's Car Tracker on April 23, 2022**

27.     A search of COOPERATOR 2's Mac laptop and its connected external hard drive

led investigators to find a folder labeled "APR 21 – V" containing 4 .pdf files with multiple USPS

shipping labels in each .pdf file. A review of USPS databases determined that these labels were

paid for and generated on April 21, 2022. Furthermore, a review of a spreadsheet on the same

laptop and hard drive showed that each of the labels had been recorded by COOPERATOR 2 with

the label number, shipping address, marketplace, and drug type/quantity.   Specifically, this

information was in the tab called "v-bust (done) – SYN ENTERPRISES."  Agents used the label

numbers to search USPS databases to identify where the labels were first scanned by USPS employees.[15]   The resulting analysis showed that a nineteen of the parcels were definitively deposited, with others having been likely deposited, along the irregular route driven by BANNER on April 23, 2022, following his visit to COOPERATOR 2's office.

### Blue Box 1304 N FEDERAL HWY POMPANO BEACH, FL 33062

28.     Seven of the parcels matching the data from COOPERATOR 2's computer were scanned by a USPS employee in the immediate vicinity of the USPS blue box located at 1304 N Federal Highway Pompano Beach, FL 33062 at 3:27 p.m. on April 23, 2022.   According to car tracking records, BANNER had stopped at this location on April 23, 2022, at approximately 11:37 a.m. after his departure from COOPERATOR 2's office. and subsequent suspiciously indirect route of travel (described above).   Below is a screenshot of the estimated Blue Box location from USPS.com alongside a screenshot of BANNER's tracker location:

 

---

[15] USPS policy is for postal employees to scan parcels upon their initial collection at a blue USPS deposit box. However, this policy is not always followed by drivers and parcels are occasionally initially scanned at later times at different locations.

29. Below is a table summarizing parcels collected from this location that appear in

COOPERATOR 2's spreadsheet and postal labels folder[16]:

| Computer Recipient Address (Street & State) | Computer Return Address | Date of Folder in Computer | Date of Blue Bin Scan \| Approx. Time | Time Banner Stopped Near Blue Bin | Drug Amount \|Type in Spreadsheet |
|---|---|---|---|---|---|
| Dell Rd.  \| KY | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/23/22 3:27pm | 4/23/2022 11:37am | 10 M30 |
| Wynship Ln. \| GA | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/23/22 3:27pm | 4/23/2022 11:37am | 20 M30 |
| Rhodes Ave. \| IL | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/23/22 3:27pm | 4/23/2022 11:37am | 20 M30 |
| Penora St. \| NY | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/23/22 3:27pm | 4/23/2022 11:37am | 1 CN |
| Wilcrest Dr. \| NC | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/23/22 3:27pm | 4/23/2022 11:37am | 1 CN |
| Potomac Mills Rd. \| VA | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/23/22 3:27pm | 4/23/2022 11:37am | 3.5 CN |
| General Moutan Ave \| LA | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/23/22 3:27pm | 4/23/2022 11:37am | .5 CN |

### Blue Box 15 S OCEAN BLVD POMPANO BEACH, FL 33062

30.     Five parcels were scanned by a USPS employee in the immediate vicinity of the

USPS blue box located at 15 S Ocean Blvd. Pompano Beach, FL 33062 at approximately 3:15

p.m. on April 23, 2022.  On the same day, BANNER had stopped at this location at approximately

11:43 a.m. after his departure from COOPERATOR 2's office and subsequent suspiciously

indirect route of travel (described above).  Below is a screenshot of the estimated Blue Box location

from USPS.com (left) alongside a screenshot of BANNER's tracker (right):

 

---

[16] Personal Identifiers of recipients on labels not included for privacy concerns.

31.     Below is a table summarizing parcels collected from this location that appear in COOPERATOR 2's spreadsheet and postal labels folder:

| Computer Recipient Address (Street & State) | Computer Return Address | Date of Folder in Computer | Date of Blue Bin Scan Approx. Time | Time Banner Stopped Near Blue Bin | Drug Amount Type in Spreadsheet |
|---|---|---|---|---|---|
| Chukker Ct. \| GA | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/23/22 11:43am | 4/23/22 3:15pm | 10 M30 |
| Massachusetts Ave. \| DC | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/23/22 11:43am | 4/23/22 3:15pm | 20 M30 |
| Elm St. \| KY | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/23/22 11:43am | 4/23/22 3:15pm | 10 M30 |
| Ross Lanier Ln. \| FL | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/23/22 11:43am | 4/23/22 3:15pm | 10 M30 |
| Aspen GQ Ave. \| NC | Vix Consulting LLC, 455 NE 5th Ave D Ste # 283, Delray Beach, FL | 21-Apr | 4/23/22 11:43am | 4/23/22 3:15pm | 50 M30 |

### *2240 W WOOLBRIGHT RD BOYNTON BEACH, FL 33426*

32.     Seven parcels were scanned by a USPS employee in the immediate vicinity of the USPS blue box located at 2240 W Woolbright Rd. Boynton Beach, FL 33426 at 3:27pm on April 25, 2022 (the Monday following April 23, 2022).   BANNER had stopped at this location at approximately 12:34pm on April 23, 2022, after his departure from COOPERATOR 2's office and subsequent suspiciously indirect route of travel (described above).   Per conversations between agents and USPS management, the delay for scan in this instance may be attributable to the fact that USPS offices close early on Saturdays and resume operation on Monday.   Below are screenshots of the estimated Blue Box location from USPS.com (left) alongside a screenshot of BANNER's tracker (right) below:

 

33.     The table below summarized the parcels collected from this location that appear in COOPERATOR 2's spreadsheet and postal labels folder:

| Computer Recipient Address (Street & State) | Computer Return Address | Date of Folder in Computer | Date of Blue Bin Scan / Approx. Time | Time Banner Stopped Near Blue Bin | Drug Amount / Type in Spreadsheet |
|---|---|---|---|---|---|
| Sterling Forest Dr. \| GA | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/25/2022 3:27pm | 4/23/2022 12:34pm | 10 M30, 10 270 |
| Wren St. NW \| MN | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/25/2022 3:27pm | 4/23/2022 12:34pm | 20 M30 |
| Jenkins Rd. \| TX | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/25/2022 3:27pm | 4/23/2022 12:34pm | 10 M30 |
| Wild Jasmine Ln. \| TX | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/25/2022 3:27pm | 4/23/2022 12:34pm | 10 M30 |
| Turquine Way \| NJ | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/25/2022 3:27pm | 4/23/2022 12:34pm | 1 CN |
| Broadway \| CO | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/25/2022 3:27pm | 4/23/2022 12:34pm | 7 CN |
| Four Mile Run Dr. \| VA | Alt Consult Group, 4801 Linton Blvd. #11A, Delray Beach, FL | 21-Apr | 4/25/2022 3:27pm | 4/23/2022 12:34pm | 14 CN |

17

34.     Based on the analysis above, comparing video surveillance, computer data, location data and USPS data, the statement COOPERATOR 2 gave to agents is reliable and that BANNER mailed the parcels listed in the spreadsheet on COOPERATOR 2's computer.

**Analysis of COOPERATOR 2's Phone**

35.     A search of COOPERATOR 2's Phone uncovered a video appearing to have been shot by COOPERATOR 2 of BANNER and a third person, later identified by COOPERATOR 2 as COOPERATOR 1 in a social club or bar setting.  BANNER appears to be wearing the same shirt he can be seen wearing in the security camera footage of COOPERATOR 2's office building on April 21, 2022. See a screenshot of the same below:

---

[17] The above three tables represent the labels from the April 21 folder on COOPERATOR 2's computer with USPS employee scans that could be plotted along BANNER's route from April 23.  It should be noted that other labels exist in this folder that could not be plotted along that route due unknown factors that may include when USPS employees elected to scan the parcels they were collecting from their routes.



**Historical Information Regarding Banner**

36.     On May 26, 2016, BANNER was sentenced to 53 months in federal prison for

violations of 18 U.S.C. 1951(a) (Conspiracy to Commit Hobbs Act Robbery), 21 U.S.C. 846

(Conspiracy to Possess with Intent to Distribute THC), and 18 U.S.C. 924(c)(l)(A) (Possession of

a Firearm in Furtherance of Drug Trafficking).

## CONCLUSION

37.     Based on the facts outlined above, your affiant believes there is probable cause to

charge Vincent BANNER with conspiracy to distribute 40 grams or more of fentanyl, in violation of

Title 21, United States Code, Sections 841(a)(1), 846, and 841(b)(1)(B)(vi).

FURTHER YOUR AFFIANT SAYETH
NAUGHT.

_____
Special Agent Gregory Hoffman
Federal Bureau of Investigation

Sworn and attested to me by Applicant by
Telephone (FaceTime) per the requirements
of Fed. R. Crim. P. 4(d) and 4.1
on the _____ day of July 2022.

_____
RYON M. MCCABE
UNITED STATES MAGISTRATE JUDGE

21

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:**   VINCENT BANNER

**Case No:** 22-8272-BER

Conspiracy to distribute 40 grams or more of fentanyl

21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(B)(vi)
* **Max. Term of Imprisonment:** 40 years of imprisonment
* **Mandatory Min. Term of Imprisonment:** 5 years
* **Max. Supervised Release:** A least 4 years up to life
* **Max. Fine:** $5,000,000

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**