UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-80113-ROSENBERG/REINHART

UNITED STATES OF AMERICA

vs.

VINCENT DANIEL BANNER,

Defendant.
_____/

## ACKNOWLEDGMENT OF OFFENSE ELEMENTS AND STIPULATION AS TO FACTUAL BASIS FOR GUILTY PLEA

I, VINCENT DANIEL BANNER, agree that the facts set forth below are true and accurate and that the United States could prove these facts against me at trial. I am pleading guilty to the single count in the indictment charging me with: conspiracy to possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846; in which it is further alleged that the controlled substance in the conspiracy attributable to the defendant, as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is: (a) 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(A)(viii); (b) 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as "fentanyl," in violation of Title 21, United States Code, Section 841(b)(1)(A)(vi); and (c) 100 grams or more of a mixture or substance containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B)(i).

## NATURE OF THE CHARGE

I am aware of and understand the nature of the charge to which I am pleading guilty. I have discussed with my attorney the charges and what the prosecutor must prove to convict me.

1

**Conspiracy to possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), and 846, as charged in the Indictment**

I understand that the United States must prove the following elements of the offense beyond a reasonable doubt:

First: Two or more people in some way agreed to try to accomplish a shared and unlawful plan to distribute a controlled substance;

Second: The defendant knew the unlawful purpose of the plan and willfully joined in it; and

Third: The object of the unlawful plan was to possess with intent to distribute: (a) 50 grams or more of methamphetamine; (b) 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as "fentanyl"; and (c) 100 grams of more of a mixture or substance containing a detectable amount of heroin.

**STIPULATED FACTS**

The defendant was arrested during a federal investigation into the unlawful distribution of controlled substances from dark web marketplace websites. The marketplaces are designed to promote the anonymous sale of illegal items, such as narcotics, in exchange for Bitcoin and other cryptocurrencies. The marketplaces use dark web technology to hide the identity of the marketplace host, vendors, and purchasers of narcotics. The marketplaces are accessible to anyone who knows how to search the dark web. The dark web marketplaces host vendor profiles akin to the profiles or "shops" seen on websites such as Ebay.com and Etsy.com. Each vendor profile markets a different selection of narcotics. Vendors typically list the type, quantity, and price of each controlled substance. After the purchases are made through the web site using cryptocurrency, the vendor mails the purchaser a parcel containing the controlled substances. In this case, parcels were sent through the United States Postal Service. The defendant primarily used the vendor profile "Syntropy."

Beginning in the summer of 2021, agents began making online undercover purchases from the Syntropy moniker across multiple dark web marketplaces including World Market, White House

2

Market, and Dark0de Market. These purchases resulted in the delivery of narcotics to undercover post office boxes. The purchases from Syntropy were conducted on July 16, 2021 (1.7 grams cocaine received on July 23, 2021), and August 3, 2021 (4.5 grams cocaine received on August 11, 2021). Each of the narcotics purchased from Syntropy field tested positive for the type of controlled substance purchased. Each of the narcotics purchases also appeared to be the type of controlled substance purchased based on the training and experience of the agents conducting the investigation. The investigation resulted in the arrest of K.F. and A.P.

For two separate periods of time from between approximately April of 2021 until October of 2021 and between April 1, 2022 and April 25, 2022, the defendant assisted A.P in packaging and distributing narcotics sold on the dark web. The defendant entered into agreements with A.P. to package and mail parcels containing controlled substances for the "Syntropy," "mrgrimm," and "syntropy2021" dark web vendor profiles. A.P. and the defendant had a falling out between a period between October of 2021 and March of 2022 because the defendant lost a kilo and a half of heroin that A.P. had given him to sell. To assist in the conspiracy, the defendant packaged and mailed parcels containing controlled substances. For packaging and mailing, A.P. paid the defendant $2,500 per week. The defendant also received narcotics from A.P.'s source of supply by finding safe residential addresses, occupied by friends, where they could receive packages containing kilogram amounts of controlled substances. A.P paid the defendant $2,500 for each parcel successfully received. The defendant also ran the Syntropy vendor profile by processing purchases and mailing parcels from the beginning of July 2021 to August 3, 2021, while A.P was incarcerated for a violation of federal supervised release. The defendant also helped run the "mrgrimm" vendor profile with A.P. Lab testing confirmed that some of the drugs sold were methamphetamine, fentanyl, heroin, and MDA.

On each of the days from April 20, 2022, to April 23, 2022, the defendant was seen on video surveillance multiple times at the business at 2200 NW Corporate Boulevard, Suite 407, Boca Raton,

Florida, 33431, where A.P. stored large quantities of controlled substances. The defendant was seen carrying boxes and mailing supplies from the business. A.P. later provided agents with access to his computer and showed where the records memorialized transactions in which the defendant mailed parcels for Syntropy. The data showed that the defendant shipped at least 52 grams of white powder fentanyl ("China White") and 620 "M30" pills with an estimated weight of 62 grams. Agents had obtained a tracking warrant for the defendant's car and saw him in the location of A.P's business office and where Syntropy parcels were mailed. Agents compared USPS records to the statements of A.P., business surveillance, the historical track of the defendant's car and location of postal boxes where parcels containing narcotics were mailed and confirmed the defendant's involvement in mailing parcels for the Syntropy vendor profile.

On May 10, 2022, agents arrested A.P. and executed a search warrant at the business at 2200 NW Corporate Boulevard, Suite 407, Boca Raton. Agents located distribution quantities of methamphetamine, fentanyl powder, M-30 pills (fentanyl), powder heroin, black tar heroin and suspected MDA/MDMA. Some of the narcotics have been tested by the DEA lab. Inside a suitcase found in the office, agents located 1811 blue round pills with the marking "M-30." The DEA lab determined that the total net weight of the pills was of a mixture containing $195.0 \text{ g} \pm 0.2 \text{ g}$ of fentanyl. Also, within the suitcase, agents located a bag containing powder that the DEA lab determined to be $341 \text{ g} \pm 2\text{g}$ of fentanyl. The substance in another bag from inside the suitcase tested positive for $39.6 \pm 0.5 \text{ g}$ of heroin. A glass jar found inside the suitcase contained $86.65 \pm 0.01$ grams of heroin according to the DEA lab report. A plastic Ziplock bag found within the suitcase contained $736 \text{ g} \pm 4$ grams of methamphetamine with a purity of $99\% \pm 6\%$ according to analysis conducted by the DEA lab. The DEA drug lab is continuing the test the other substances located during the search. During the search, agents observed that the office was a partially legitimate virtual mailbox company. The company had a room stocked with mailing materials to include envelopes and mylar bags of the type used to send

drugs which agents ordered from the Syntropy vendor profile. Agents also collected surveillance footage of the defendant entering and exiting the office space on multiple occasions when he was in the company of A.P.

The defendant was previously convicted for an offense related to narcotics distribution. On May 26, 2016, the defendant was sentenced to 53 months of imprisonment to be followed by 3 years of supervised release for conspiracy to interfere with commerce by threats of violence (Hobbs Act Robbery), in violation of 21 U.S.C. § 1951(a); conspiracy to possess with intent to distribute detectable amounts of THC and marijuana and one kilograms or more of hashish oil, in violation of 21 U.S.C. § 846; and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). The defendant was on supervised release at the time of the offense to which the defendant is pleading in this case.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: 11/14/22   By: _____
DANIEL E. FUNK
ASSISTANT UNITED STATES ATTORNEY

Date: 11-14-22   By: _____
JOSHUA D. RYDELL
ATTORNEY FOR DEFENDANT

Date: 11-14-22   By: _____
VINCENT DANIEL BANNER
DEFENDANT